IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **WENDY PATTERSON** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:21-cv-187 |
| | § | JURY TRIAL |
| **WAL-MART ASSOCIATES, INC.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES** Wendy Patterson (hereinafter "Plaintiff"), filing this, her *Plaintiff's Original Complaint*, complaining of Wal-Mart Associates, Inc., (hereinafter "Defendant"). In support of same, Plaintiff would show unto this Honorable Court as follows:

**I. PARTIES**

1.  Plaintiff is a female citizen of the United States and a Texas resident, residing in Nueces County, Texas.

2.  Defendant is a foreign for-profit corporation authorized to do business in the State of Texas, and can be served by way of process via its registered agent, to wit: CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

**II. JURISDICTION, VENUE & CONDITIONS PRECEDENT**

3.  Jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343, as Plaintiff asserts causes of action involving federal questions based upon Title VII of the Civil Rights Act of 1964. At all times pertinent to this Complaint, Defendant was an enterprise engaged in interstate commerce. The Court has personal jurisdiction over Defendant because Defendant conducted business in Texas, has entered into relationships with Plaintiff in Texas, and committed actions and/or omissions in Texas that give rise to this cause of action.

4. Defendant was substantially in control of the terms of Plaintiff's work and was the Plaintiff's employer as defined by 29 U.S.C. §203(d).

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in said District. Additionally, Defendant is a resident of and is doing business in said District.

6. Plaintiff timely filed a Notice of Charge of Discrimination dually with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), charge number 451-2021-01769.

7. On May 26, 2021, the EEOC e-mailed Plaintiff her *Dismissal and Notice of Rights*, which she received on May 28, 2021.

8. Plaintiff has therefore complied with all conditions precedent and exhausted all administrative remedies prior to filing suit. Plaintiff now timely files this, her *Plaintiff's Original Complaint*, within ninety (90) days of receiving her *Dismissal and Notice of Rights*.

### III. BACKGROUND FACTS

9. Plaintiff was an employee of WAL-MART Associates, Inc. ("Wal-Mart"), where she worked faithfully for approximately five years, before she was fired. Prior to being involtarily terminated, Plaintiff had planned on working for Wal-Mart until she retired. When Plaintiff began working for Wal-Mart, her initial department supervisor was Tyler. In or about 2019, Plaintiff's department supervisor changed and she began reporting to Samantha Logan and that is when her troubles at work began.

10. The members of Plaintiff's team were Richard Trahan, Rick De La Rosa (Plaintiff's immediate supervisor), Santos Rodriguez, Maria McBryde, Jeremy Vannoy, Anna Flores and Aaron Villarreal. From the beginning, Plaintiff observed and experienced discrimination by

Samantha which was based on sex (female). For instance, Samantha acted very friendly toward the men but acted very unfriendly to the women, including speaking to the women (only) in a demeaning manner. For example, Samantha would come in to work and say "good morning" to all of the men while ignoring Plaintiff and the other women.

11. As time went on, Samantha began to personally targeted Plaintiff. Prior to Samantha becoming Plaintiff's department supervisor, she had never gotten in trouble or been written-up at work. After Samantha became her supervisor, Plaintiff received several frivolous and unfounded write-ups (or "coachings" as they refer to them at Wal-Mart) from her. For instance, Plaintiff was asked by Samantha to work overtime and then almost immediately written-up by Samantha for working the overtime hours Samantha requested that Plaintiff work. When Plaintiff spoke to Wal-Mart's general manager about this, he agreed that Plaintiff should not have been written-up and he removed that write-up from her personnel file.

12. Another time, Samantha told Plaintiff to leave work by yelling at her to "get the hell off my clock" – when Plaintiff followd her directions and clocked out – Samantha wrote her up for leaving early. Again, Plaintiff spoke to the general manager who again agreed with her and removed that write-up from Plaintiff's personnel file.

13. As a result of both forementioned write-ups, and because Plaintiff believed Samantha was targeting her by attempting to have her fired based on her sex (female), she complained to the general manager at least four or five times. Plaintiff explained that she believed she was being discriminated against by Samantha based on her sex but nothing ever changed – in fact, things only kept getting worse.

14. Samantha's offensive behaviors at work also created a hostile work environment. Wal-Mart has a policy that managers/supervisors are not allowed to date and/or be romantically

involved with someone they are supervising. In the beginning of October 2020, during her shift, Plaintiff witnessed Samantha sneak off with Aaron Villarreal (a member of Plaintiff's team). Samantha had the keys to Aaron's truck and Plaintiff observed Samantha get into Aaron's truck, drive over to pick Aaron up and she saw them drive off together. This type of romantic relationship was not allowed in the workplace and witnessing Samantha and Aaron's unwelcome behavior intimidated and offended Plaintiff, and made her feel extremely uncomfortable to the point that it became abusive.

15. In compliance with company policy, Plaintiff immediately reported what she perceived as sexual harassment to the Ethics Hotline. Approximately a day or so later, the regional manager and a representative from human resources ("HR") and came in to the store where Plaintiff worked to speak with Samantha. Plaintiff was told that they would also be talking to her too, but they never did that. Shortly thereafter, Plaintiff heard from another employee that Samantha was crying because she had never been "red flagged" before and that Samantha said she knew it Plaintiff who reported her. Immediately thereafter, Samantha began retaliating against Plaintiff – first, by reducing her scheduled hours.

16. Samantha also created a hostile work environment by inappropriately touching the male employees in Plaintiff's presence. For instance, Plaintiff witnessed Samantha frequently touching some of the male associates under their belts acting like she was tickling them. Plaintiff also witnessed Samantha inappropriately touching Aaron's arms and muscles right in front of her. Samantha's unwelcome behavior of touching the males inappropriately out in the open at work intimidated and offended Plaintiff, and made her feel extremely uncomfortable to the point that Samantha's behaviors bcame abusive.

17. In or about the beginning of 2021, in compliance with company policy, Plaintiff reported Samantha to the Ethics Hotline a second time. After she made her second report, the ethics department and HR arranged a Zoom conference with Plaintiff, along with other team members, including Jeremy, Anna and Santos. Plaintiff was told that her complaints about Samantha would be investigated although Plaintiff does not know whether Samantha was actually investigated and/or disciplined. Regardless, Samantha was allowed to continue to supervise Plaintiff and about one month later Samantha retaliated against Plaintiff for making said complaints by firing her.

18. Samantha told Plaintiff she was firing her for a safety violation because of the way Plaintiff placed her knee when removing something from a shelf. Such proffered excuse of a "safety violation" is not the real reason for Plaintiff's termination. Plaintiff has witnesses Rick De La Rosa, Michael Sheriff, John Driller, Aaron Villarreal, Joe Cruz and Maria McBryde all place their knee in the same position, on countless occasions, when removing something from and/or placing something on the shelf but none of those individuals were ever disciplined or fired for violating a safety policy.

19. In sum, Plaintiff believed she was the victim of multiple acts of sex discrimination, she made multiple complaints of said discrimination in good faith, she was forced to continue to work under the supervision of her harasser and she was then fired by her harasser in retaliation for complaining.

### IV. COUNTS I & II:
### SEXUAL HARASSMENT, DISCRIMINATION AND RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

20. By and through her *Original Complaint*, Plaintiff pleads that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff based on her sex, by harassing Plaintiff, and by creating a hostile workplace environment in connection

with compensation, terms, conditions or privileges of employment. Defendant further violated Title VII by taking tangible employment actions against Plaintiff. Defendant's actions were taken with malice or with reckless indifference to Plaintiff's federally protected rights. Defendant unlawfully retaliated against Plaintiff in violation of Title VII, when Defendant took employment actions against Plaintiff because she opposed conduct made unlawful by Title VII. Specifically, Plaintiff was retaliated against when she complained to management about sexual harassment and was thereafter fired.

21. Defendant's actions were taken with malice and with reckless indifference to Plaintiff's federally protected rights and Defendant employer is strictly liable for a supervisor's harassment and subsequent retaliation when a supervisor actually takes a tangible employment action based on Plaintiff's opposition to conduct made unlawful by Title VII.

## V. DAMAGES

22. As a result of Defendant's unlawful conduct, the Plaintiff has suffered and will continue to suffer damages in the form of lost back wages, lost future wages, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

23. Defendant engaged in retaliation with malice or reckless indifference to Plaintiff's rights. Plaintiff is thus entitled to exemplary damages.

24. Plaintiff is entitled to recover from the Defendant a reasonable fee for the performance of necessary legal services in the preparation and prosecution of this action in the trial court as well as a reasonable fee for legal services performed on appeal.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that this Honorable Court allow her to recover the following:

a. all direct damages;

b. consequential and incidental damages, which may include the value of lost income for advancements, lost salary income for future employment, and whatever else may be proven during the course of litigation;

c. compensatory and non-compensatory damages, whether general or special, in an amount deemed sufficient by a trier of fact;

d. an additional sum representing the present value of unaccrued wage payments, front pay, and all other compensation due to Plaintiff for the period following the date of judgment, calculated as of the date of judgment;

e. an award for past pain and suffering;

f. an award for future pain and suffering;

g. an award for past mental anguish;

h. attorney fees in a reasonable amount together with conditional awards in the event of appeal;

i. court costs, including the costs of litigation;

j. because of the callous, willful, recklessly indifferent, malicious, wanton, grossly negligent and/or intentional conduct or acts of Defendant, Plaintiff seeks exemplary damages;

k. pre-judgment interest and post judgment interest, at the maximum rate as allowed by law; and

l. any other relief that the Court deems necessary.

Respectfully submitted,
**GALE LAW GROUP, PLLC**
711 N. Carancahua St., Suite 514
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Phone Number: 361-808-4444
Fax Number: 361-232-4139

By: /s/ Amie Augenstein
Amie Augenstein
Texas Bar No. 24085184
Southern District Bar No. 2236723
Amie@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*

7

/s/ *Christopher J. Gale*
Christopher J. Gale
Texas Bar No. 00793766
Southern District Bar No. 27257
Chris@GaleLawGroup.com
*Attorney for Plaintiff*

### Demand for Jury Trial

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).

### NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 25th day of August, 2021.

/s/ *Christopher J. Gale*
Christopher J. Gale